# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANA L. STILLS, )
)
        Plaintiff, )
)
vs. )   Case No. 10-cv-37-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of the Social Security )
Administration, )
)
        Defendant. )

## OPINION AND ORDER

Plaintiff Dana L. Stills, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying her applications for disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 12). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The

evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born February 20, 1963 and was 46 years old at the time of the Administrative Law Judge's ("ALJ") final decision on April 16, 2009.[1] (R. 62). Plaintiff has a twelfth grade education plus two years of college. (R. 22, 125). Plaintiff's prior work history consists of work as a customer service representative (skilled, SVP 6, medium exertion) (R. 38), lead cashier at a casino (semi-skilled, SVP 4, medium exertion) id., packing clerk (un-skilled, SVP 2, heavy exertion) id., payroll clerk (semi-skilled, SVP 4, sedentary exertion) id. Plaintiff alleges a disability onset date of May 30, 2005. (R. 91, 94).

At the September 19, 2008 hearing, plaintiff testified that the problems she faces that interfere with her ability to work are pain in her shoulder, a collapsed disc at C3, which causes headaches, pain, and numbness in her arms and hands, and fibromyalgia. (R. 24-28). She discussed her pain medications (Neurontin, Darvocet, Cymbalta, Lyrica and Flexeril). (R. 29). The only side effects plaintiff mentioned at the hearing stemmed from trigger point injections she received from her pain specialist. (R. 30). She stated her overall pain level is a seven (7) on a scale of 0-10, with ten (10) being the worst pain she could imagine. (R. 31).

Plaintiff claimed to be able to sit approximately 30 minutes before she needed to change

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 47-51, 52-55, 58-60, 61-63). A hearing was held before ALJ Lantz McClain September 19, 2008, (R. 17-42), in Tulsa, Oklahoma. By decision dated April 16, 2009, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 7-16). On November 19, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

3

position, stand approximately an hour, walk 15 minutes, and lift five (5) pounds with both hands. (R. 32). She stated she spends most of the day lying on the couch with heat and ice to help her pain, that she "lightly cooks" and does light housecleaning with her husband cleaning things such as the bathroom and doing laundry on the weekends. (R. 34, 35). She defined light housecleaning as loading the dishwasher and wiping counters. (R. 35). Plaintiff stated her husband also shops for groceries, pays the bills and does the yard work. (R. 37).

Plaintiff's medical records range in time from June, 2004 to August, 2008, and include records from plaintiff's treating physicians, medical testing, and state consultative examinations. (R. 217-223, 224-266, 267-269, 270-277, 278-282, 283-286, 287-295, 296-312, 313-318, 319-323, 324-326, 327-338, 339-345, 346-381). There is also a "Physician Medical Source Statement" form dated March 16, 2009 and signed by Ralph Richter, M.D. (R. 382-387). The records show diagnoses of myofascial pain,[2] carpal tunnel syndrome, a compression fracture at C2 and C3, and thoracic outlet syndrome.[3] (R. 217, 252, 257, 267). Plaintiff received pain medications (Propoxyphene-N, generic for Darvon-N, a narcotic pain reliever removed from the U.S. market in 2010, Gabapentin, an anti-epileptic medication that affects nerves to help some types of pain, Cyclobenaprine, generic for Flexeril, a muscle relaxant, Cymbalta, an anti-depressant also used to treat chronic pain, and Lyrica, an anticonvulsant that also affects brain

---

[2] Myofascial pain is defined as a chronic form of muscle pain. The pain of myofascial pain syndrome centers around sensitive points in the muscles called trigger points. Trigger points can be painful when touched, and the pain can spread throughout the affected muscle.
See http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042.

[3] Thoracic outlet syndrome is defined as a group of disorders, causing shoulder pain, neck pain and numbness in fingers, that occur when blood vessels or nerves in the space between the collarbone and first rib (thoracic outlet) become compressed.
See http://www.mayoclinic.com/health/thoracic-outlet-syndrome/DS00800.

chemicals that send pain signals across the nervous system)[4] (R. 204), and trigger point injections of Carbocaine, a regional anesthetic, Marcaine, another regional anesthetic, and Depo-Medrol, an anti-inflammatory, and an unnamed steroid injection. (R. 282, 316, 364). These were administered by C. Scott Anthony, DO, her pain specialist, Ralph W. Richter, M.D., her neurologist, and the emergency department of the Claremore Indian Hospital.

A non-examining agency physical RFC was submitted on January 17, 2007 by Judy Marks-Snelling, D.O., M.P.H. (R. 209-216). Plaintiff was diagnosed with collapsed vertebrae and headaches and given the following RFC:

> Occasionally lift and/or carry (including upward pulling) 20 pounds;
> Frequently lift and/or carry (including upward pulling) 10 pounds;
> Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;
> Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and
> Push and/or pull (including operation of hand and/or foot controls) – unlimited, other than as shown for lift and/or carry.

(R. 210). Plaintiff was found to have no postural, manipulative, visual, communicative, or environmental limitations. (R. 211-213).

## Procedural History

Plaintiff alleges her disabling impairments are "collapsed vertebrae, shoulder, back, [and] neck." (R. 120). In assessing plaintiff's qualifications for disability, the ALJ first stated plaintiff met the insured status requirements of the Act through December 31, 2008. Next, he determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since May 3, 2005, her alleged onset date. (R. 12). At step two, the ALJ found plaintiff to have the severe impairments of status post thoracic surgery, compression fracture cervical spine, and mild degenerative disk disease. Id.

---

[4] Information taken from www.drugs.com.

At step three, the ALJ determined plaintiff's impairments did not meet the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926), specifically discussing section 1.04, Disorders of the spine. (R. 12-13). He disposed of the allegation that plaintiff suffered from fibromyalgia by explaining although plaintiff's attorney alleged it at the hearing, "there is no medical evidence of this diagnosis in the medical evidence of record." (R. 13). Before moving to the fourth step, the ALJ found plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except only occasionally stoop and avoid work above shoulder level.

Id. At step four, the ALJ determined that plaintiff was able to perform the past relevant work of lead cashier, customer service clerk, and payroll clerk. (R. 16). Finding the plaintiff not disabled at step four, the sequential process stopped, the ALJ did not need to proceed to step five. The ALJ concluded that plaintiff was not disabled under the Act from May 3, 2005, through the date of the decision. Id.

## Issues Raised

Plaintiff's allegations of error are as follows:

1. The ALJ improperly rejected the opinion of plaintiff's treating physician; and

2. The ALJ relied upon an improper hypothetical question.

(Dkt. # 16 at 4).

## Review of Issues

Plaintiff first claims the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Richter. This argument is without merit.

Plaintiff argues "… the ALJ failed to consider or even mention in his decision two documents imposing physical limitations on the Claimant. … Dr. Richter opined that the Claimant could lift no more than ten pounds. Additionally, the ALJ nor the Appeals Council mentioned the Physical Medical Source Statement completed by Dr. Richter on March 16, 2009." (Dkt. # 16 at 5). It is clear to the undersigned that the ALJ considered Dr. Richter to be a treating physician and that he also considered Dr. Richter's treatment records. He discussed these records at length, (R. 14-15), and mentioned Dr. Richter's note restricting plaintiff to lifting no more than 10 pounds. (R. 14).

Plaintiff's attorney did not request an extension of the record, however, he did mention he intended to submit additional records from Dr. Anthony, plaintiff's pain specialist. The ALJ held the record open for an additional ten (10) days, until September 29, 2008, for this submission. (R. 41-42). No additional records from Dr. Anthony were submitted. Also, according to the record, plaintiff sent Dr. Richter's "Physical Medical Source Statement" to the Appeals Council on June 16, 2009, so it was not before the ALJ at the time of his decision. (R. 205). The Appeals Council did not find any reason to review the decision of the ALJ under their rules. In their notice of action, the Appeals Council specifically stated:

**What We Considered**

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

The additional checklists do not contain any medical findings and the decision otherwise adequately explained why the claimant could perform a limited range of sedentary exertion.

(R. 1-2). The Order of Appeals Council lists "Exhibit 14E Letter dated 6/16/09 from counsel" and "Exhibit 19F Statement dated 7/24/09 from Dr. Richter" as additional evidence considered and made part of the record. (R. 4).

Plaintiff argues "Dr. Richter's Physical Medical Source Statement is supported by objective testing which included an MRI and was confirmed by another neurologist, Steven Gaede, M.D." This is not true. Dr. Gaede's records do not reflect the limitations found in the Physical Medical Source Statement from Dr. Richter. In a report to Dr. Anthony, Dr. Gaede mentioned plaintiff's neck and right shoulder pain, stating he did not find any other source for the pain than the collapse of her C3 vertebrae. (R. 268). Dr. Gaede also mentioned he was hesitant to try surgical correction and was in favor of more conservative methods of treating plaintiff's pain. (R. 284).

The limitations found in Dr. Richter's Physical Medical Source Statement are not supported by either his own treatment records of plaintiff or the objective medical evidence in the record as a whole. The undersigned finds the ALJ properly considered the records of Dr. Richter and the Appeals Council properly considered Dr. Richter's Physical Medical Source Statement.

Next, plaintiff argues the ALJ relied on an improper hypothetical question to the vocational expert, stating the ALJ presented three hypothetical questions at the hearing. A review of the hearing transcript shows the ALJ presented two questions, one with a light exertion level, and one with a sedentary exertion level, both with the additional limitations of occasionally stooping and avoiding work above shoulder level. (R. 39-40). The vocational expert testified with a light exertion level, plaintiff would be able to perform her past work of lead cashier as it is generally performed, but not the level she formerly performed it. The vocational expert also

stated she could return to customer service work and payroll clerk. (R. 39). When the ALJ changed the hypothetical question to sedentary, the results were the same. (R. 40). According to the Dictionary of Occupational Titles, the three jobs identified by the vocational expert are all sedentary positions, as generally performed.[5]

The ALJ did misstate the definition of sedentary work at the hearing when he included the statement "frequent/lift and carry up to twenty pounds," however, in his decision, his RFC did not include that statement. The vocational expert found plaintiff would be able to perform three of the jobs listed as her past work. (R. 40). The undersigned finds that any reasonable fact finder would conclude that the outcome would not be changed by an additional hypothetical question excluding the "frequent/lift and carry up to twenty pounds" statement, and that substantial evidence supports the decision of the ALJ.

## **Conclusion**

The decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 13th day of April, 2011.

_____
T. Lane Wilson
United States Magistrate Judge

---

[5] DOT job numbers: 215.382-014, Payroll Clerk; 211.362-010, Cashier; 239.362-014, Customer Service Representative.